UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL SANTIAGO,<br>    *Plaintiff*,<br>    *v.*<br>STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION and DOREEN ROSSI,<br>    *Defendants*. | Civil No. 3:12cv132 (JBA)<br><br>November 5, 2012 |

**RULING ON MOTION TO DISMISS**

Plaintiff Samuel Santiago filed suit against his employer, the Connecticut Department of Transportation ("DOT") and Human Resources Specialist Doreen Rossi, claiming violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, and retaliation in violation of the self–care provision of FMLA, 29 U.S.C. § 2612(a)(1). Defendants move [Doc. # 35] to dismiss Plaintiff's Amended Complaint [Doc. # 28] in its entirety, arguing that this Court lacks subject matter jurisdiction over Plaintiff's claims, in light of the Supreme Court's conclusion in *Coleman v. Court of Appeals of Maryland*, 566 U.S. ___, 132 S. Ct. 1327, 1332 (2012), that "suits against states under [§ 2612(a)(1)(d)] are barred by the States' immunity as sovereigns in our federal system." Plaintiff opposes, arguing that the *Coleman* decision only precludes a suit for money damages against the state, and that his claims for injunctive relief against the DOT, and for money damages against Ms. Doreen Rossi in her individual capacity, are within the Court's subject matter jurisdiction. For the reasons that follow, Defendants' motion is granted in part.

I.  Factual Allegations

Plaintiff's Amended Complaint [Doc. # 28] alleges that he was employed by Defendant DOT, where Defendant Rossi was the Principal Human Resources Specialist. Plaintiff's employment with the State of Connecticut began in 1998, and he has worked as Material Storage Supervisor II since 2006. (Am. Compl. ¶¶ 10–11.) In 2000, Plaintiff was diagnosed with cluster headaches, a "serious medical condition requiring continuing medical treatment." (*Id.* ¶ 13.) In May 2011, Plaintiff submitted a request for intermittent FMLA leave to Defendant Rossi and provided supporting medical information and certification from his treating physician. (*Id.* ¶ 14.) Plaintiff was informed by Defendants that if he proceeded with this submission, he could either resign his position or termination proceedings would be instituted against him. (*Id.* ¶ 17.) Defendants refused to authorize his request for FMLA leave. (*Id.* ¶¶ 18–19.)

After Plaintiff nonetheless submitted his FMLA leave request, Defendant Rossi advised him that he would be "immediately placed on an involuntary unpaid leave, during the first two weeks of which Defendant State of Connecticut would search for a 'less arduous work' assignment for Plaintiff and, in the event that no such assignment was found, Defendant State of Connecticut would pursue termination proceedings." (*Id.* ¶ 24; Count 3 ¶ 17.) Plaintiff identified a position to which he could be transferred (*id.* ¶ 26), as did Janice Snyder, the Assistant Director of DOT's Material Management Department (*id.* ¶ 27). On June 30, 2011, Defendant informed Plaintiff that no positions were identified to which he could transfer, and that he would be "separated from employment immediately" and placed on an indefinite unpaid leave. (*Id.* ¶¶ 30–31.) Plaintiff was "instructed" to apply for disability retirement. (*Id.* ¶ 31.)

From July 1, 2011 through December 26, 2011, Plaintiff was on involuntary leave, and forced to use up all the paid time off that he had accrued, including sick leave and vacation time. (*Id.* ¶¶ 32–34.) Plaintiff returned to work on December 27, 2011, but was informed by Defendants that he would "not be permitted to exercise his rights under the FMLA upon [his] return," and that he would lose his seniority and time accrued if he took five or more days of leave. (*Id.* ¶¶ 35–37; Count 3 ¶¶ 36–37.)

As a result of Defendants' conduct, Plaintiff has obtained a state service position elsewhere with the University of Connecticut,[1] but alleges that he has been retaliated against for attempting to exercise his FMLA rights, and that the DOT and Defendant Rossi "continue[] to interfere" with his attempts to exercise his FMLA rights by "discouraging him to take leave." (*Id.* ¶ 45.) Plaintiff alleges that he has suffered economic losses, employment benefits, "other compensation and loss of employment benefits," and has incurred and continues to incur attorneys' fees and costs. (*Id.* ¶¶ 47–48.)

Based on these factual allegations, Plaintiff brings Counts One and Two against Defendant DOT, (1) Interference with the exercise of rights in violation of the FMLA, and (2) Retaliation in violation of FMLA's self–care provision, and Counts Three and Four against Defendant Rossi, (3) Interference with the exercise of rights in violation of the FMLA, and (4) Retaliation in violation of FMLA's self–care provision.

## II. Discussion

Defendants move to dismiss all four counts of the Amended Complaint for lack of subject matter jurisdiction, asserting that Plaintiff's claims of violation and retaliation in violation of FMLA must be dismissed in light of the United States Supreme Court's

---

[1] Defendants' counsel represented at oral argument that Plaintiff transferred to this new position approximately one month ago.

March 20, 2012 decision in *Coleman v. Court of Appeals of Maryland*. Plaintiff argues that *Coleman* only precludes his suit for money damages against Defendant DOT, but not against Defendant Rossi, and that he is still permitted to sue both Defendants for injunctive relief.

### A.  Legal Standard

 "[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### B.  *Coleman* Decision

In *Coleman*, the Supreme Court was asked to decide whether in a federal action "a state employee is allowed to recover damages from the state entity that employs him by invoking one of the provisions of a federal statute that, in express terms, seeks to abrogate the States' immunity from suits for damages." 132 S. Ct. at 1332 (2012). The Supreme Court concluded, "[i]n agreement with every Court of Appeals to have addressed this question, this Court now holds that suits against States under this provision are barred by the States' immunity as sovereigns in our federal system." *Id.* (citing 626 F.3d 187 (4th Cir. 2010) (case below); *Nelson v. Univ. of Tex.*, 535 F.3d 318 (5th Cir. 2008); *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106 (8th Cir. 2007) (per curiam); *Toeller v. Wis.*

*Dep't of Corr.*, 461 F.3d 871 (7th Cir. 2006); *Touvell v. Ohio Dep't of Mental Retardation & Dev. Disabilities*, 422 F.3d 392 (6the Cir. 2005); *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159 (10th Cir. 2003); *Laro v. New Hampshire*, 259 F.3d 1 (1st Cir. 2001)).

The statutory provision at issue in *Coleman*, as here, was the self–care provision of the FMLA.[1] Justice Kennedy, writing for the plurality, concluded that:

> To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations. It failed to do so when it allowed employees to sue States for violations of the FMLA's self–care provision.

*Id.* at 1338.

In her dissent, Justice Ginsberg emphasized that "the plurality's opinion does not authorize state employers to violate the FMLA, although it does block injured employees from suing for monetary relief. The self–care provision remains valid Commerce Clause legislation, Maryland concedes, and consequently binds the states, as well as the private sector." *Id.* at 1350. "An employee wrongly denied self–care leave, Maryland also acknowledges, may, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), seek injunctive

---

[1] The "self–care" provision of the FMLA provides, in pertinent part:
    (a)    In general
    (1)    Entitlement to leave
        Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . .

    (D)    Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1)(D).

relief against the responsible state official." *Id.* It is this distinction that Plaintiff relies on for his claims for injunctive relief against Rossi.

The Second Circuit has not yet considered this issue in the wake of *Coleman*. However, several district courts, including one within the Second Circuit, have barred suits against state employers for violation of FMLA's self–care provision based on *Coleman*. *See Johnson v. New York State Dep't of Correctional Servs.*, No. 11cv079S, 2012 WL 4033485, at *3 (Sept. 12, 2012) ("Plaintiff's FMLA claims [against the State Department of Corrections] are based on her leave for self–care, and are therefore dismissed for lack of subject matter jurisdiction.").

### C. Plaintiff's Claims for Money Damages

Plaintiff does not dispute that he is precluded in this federal suit from seeking claims for monetary damages against the DOT and agrees that he would be similarly barred if he were seeking monetary damages against Defendant Rossi in her official capacity, as "[a] similar suit for money damages asserted against a state employee acting in her official capacity is deemed to be a suit against the state, and hence, it too is barred by the Eleventh Amendment." *Harter v. County of Washington*, CIV.A. 11-588, 2012 WL 1032478, at *3 (W.D. Pa. Mar. 27, 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, Plaintiff clarified at oral argument that Defendant Rossi is being sued in her individual capacity as an "employer" under FMLA.

FMLA defines "employer" as:

> (4) Employer. (A) In general. The term "employer"—
> (ii) includes—
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

29 U.S.C. § 2611(4)(A).

Three circuits have concluded that public employees may be held individually liable under the FMLA. *See Modica v. Taylor*, 465 F.3d 174 (5th Cir. 2006); *Darby v. Bratch*, 287 F.3d 673, 680–81 (8th Cir. 2002); *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001) (plaintiffs stated a claim under the FLSA—which has a similar definition of "employer" as the FMLA—against their individual supervisors, who were public employees, and "[t]he general rule is that such suits are not barred by the [Eleventh] amendment, because the plaintiff is seeking damages from individuals rather than from the state treasury. . . . The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant, . . . because it is the voluntary choice of the state, not a cost forced on it by the federal–court suit.") At least two district courts within the Second Circuit have also recognized these individual employer liability claims against public employees. *See Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448 (S.D.N.Y. 2011) ("The most straight forward reading of the text compels the conclusion that a public employee may be held individually liable under the FMLA." (quoting *Modica*, 465 F.3d at 186)); *Wanamaker v. Westport Bd. of Educ.*, No. 11cv1791(VLB), 2012 WL 4445314, at *6 (D. Conn. Sept. 25, 2012) (citing *Rasic v. City of Northlake*, 563 F. Supp. 2d 885, 892 (N.D. Ill. 2008) (Congress "has chosen to subject individual employees who 'act in the interest of the employer' with respect to employees to personal liability. We find no evidence in the statutory language or structure that Congress meant to do so only for private, and not public, employees.")). Given Plaintiff's clarifications that he only claims money damages for FMLA violations against Defendant Rossi in her individual capacity as an "employer" under the FMLA, the Court concludes for now that it has subject matter jurisdiction over Plaintiff's FMLA claim and Defendants' motion to dismiss Plaintiff's

7

claims for monetary damages against Defendant Rossi in her individual capacity as his 'employer' are therefore denied.

### D. Plaintiff's Claims for Injunctive Relief

In Counts One and Two, Plaintiff seeks injunctive relief, reinstatement of benefits, and attorneys' fees and costs against the DOT. (*See* Am. Compl. at 14.) In *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam), the Supreme Court held that a suit for injunctive relief against a state is barred by the Eleventh Amendment unless the state has consented to the filing of the suit. It is Plaintiff's burden on a 12(b)(1) motion to dismiss of proving by a preponderance of the evidence that subject matter jurisdiction exists," *Makarova v. United States*, 201 F.3d at 113 (2d Cir. 2000), and Plaintiff must show that the State has consented to this suit. Plaintiff has made no such showing, and thus Plaintiff's claims for injunctive relief against the State Department of Transportation itself—Counts One and Two—must be dismissed.

In Counts Three and Four, Plaintiff also sues Defendant Rossi in her official capacity under the doctrine of *Ex parte Young*, and "[o]fficial–capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Thus, Plaintiff's suit against Rossi for injunctive relief is not barred. *See, e.g.*, *Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 187 (D. Conn. 2009) ("In considering whether a plaintiff has satisfied *Ex parte Young*, the Court 'need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (citing *CSX Transp. Inc. v. N. Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002))).

Plaintiff has sued Defendant Rossi in her official capacity for prospective injunctive relief, alleging that "Defendant Rossi continues to interfere with Plaintiff's attempts to exercise his rights under the FMLA by discouraging him from taking leave." (Am. Compl. ¶ 45.) At oral argument, Plaintiff's counsel clarified that Plaintiff seeks injunctive relief in the form of: (1) an injunction so that Defendant Rossi is enjoined from denying him intermittent leave under FMLA self–care provision, should he qualify for it, and (2) reinstatement of the employment benefits that he alleges he has lost as a result of Defendant Rossi's actions. (*See also* Am. Compl. at 14.)

As Plaintiff has alleged an ongoing violation of federal law and seeks relief that is properly characterized as prospective, *see Nelson*, 535 F. 3d at 322 (reinstatement constitutes prospective relief under *Ex parte Young* doctrine), Defendants' motion to dismiss the claims against Defendant Rossi in her official capacity will be denied.

## IV. Conclusion

For the reasons discussed above, Defendants' motion [Doc. # 35] to dismiss is GRANTED as to Counts One and Two, and DENIED as to Counts Three and Four.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 5th day of November, 2012.